168

GLENN H. HARTMAN AND MARGARET F. HARTMAN, HIS WIFE, PLAINTIFFS, v. SMYTH SALES, INC., DEFENDANT.

Decided February 24, 1939.

For the plaintiffs, *Ward & McGinnis*.

For the defendant, *Farkas & Samuels*.

WOLBER, C. C. J.   This action was tried before me without a jury, the same having been waived by stipulation of the parties.

The plaintiffs allege that on September 10th, 1935, they entered into a written contract with the defendant corporation, whereby defendant was to install one Arco Petro Boiler Burner Unit and a 275 oil tank with all piping and wiring for complete installation.   Under the terms of the contract defendant expressly warranted that the said oil burner would give forth sufficient radiation to supply sufficient heat at a temperature of seventy-two degrees when outside temperature registered zero.

Plaintiffs contend that defendant breached its warranty in this respect in that the oil burner referred to in the contract failed and has continued to fail to supply sufficient radiation to keep the room temperature at seventy-two degrees, and ask damages against the defendant for $690.

In the second count of their complaint plaintiffs repeat the allegations of the first count, and after contending that defendant has breached its warranty, ask that the contract be rescinded and the purchase price of $690 be returned to them.

At the trial the first count was abandoned by the plaintiffs.

Defendant in its answer denied these allegations.

I find that the Arco Petro Boiler Burner Unit failed and has continued to fail to supply sufficient radiation to keep plaintiff's house at 99 Lyall road, Allwood, New Jersey, at a temperature of seventy-two degrees when outside temperature reaches zero; that on February 10th, 1936, plaintiffs, by letter from their attorneys to the defendant, requested defendant to remove the boiler and make some arrangement for the return of the purchase price, because repeated tests had shown that the warranty contained in the written contract between the parties could not be obtained; that on February 15th, 1936, defendant corporation wrote plaintiff's attorneys in reply to their letter of February 10th, 1936, that the job will produce seventy-two degrees at zero weather; that it was properly sized and properly installed, and defendant had asked the American Radiator Company and Petroleum Heat and Power Company to make a survey and render reports to it, a copy of which they would forward to plaintiffs' attorneys. In this letter defendant declined to accede to plaintiffs' request to remove the equipment and refund the purchase price.

On February 25th, 1936, by a letter from defendant to plaintiffs' attorneys, a copy of a letter written to defendant by the American Radiator Company was enclosed, and defendant came to the definite conclusion that what Mrs. Hartman objected to was draft, and that defendant was going to install a twenty-foot radiator close to the front door to offset any draft, as suggested by the American Radiator Company engineer.

Mr. McKeown, a witness offered by the defendant, testified that some time after February 10th, 1936, the system received some service as a result of calls from Mr. Hartman. The witness did not fix the time of the call other than in the year 1936, but Mr. Hartman testified that while a representative of defendant often spoke of remedying the condition, nothing definite was offered to him.

This case is controlled by the provisions of the Uniform Sales act, and particularly section 69 thereof, *R. S.* 46:30-75:

"Remedies for breach of warranty.

"(1) Where there is a breach of warranty by the seller, the buyer may, at his election: * * *

"(d) Rescind the contract to sell or the sale and refuse to receive the goods, or, if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid. * * *

"(3) Where the goods have been delivered to the buyer he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale.

"(4) Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price.

"(5) Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by section 46:30-59 of this title."

This case does not present the question of the failure on the part of the buyer within a reasonable time after discovery of the fact which entitles him to a rescission to notify the

other party of his intention to do so, but presents the situation whether the buyer has waived his election to rescind by the continued use of the property for a considerable period of time thereafter.

In support of defendant's contention that under the testimony it should have a verdict in its favor, the following New Jersey cases have been submitted to the court:

*Gerli & Co.* v. *Mistletoe Silk Mills,* 83 *N. J. L.* 7; 84 *Atl. Rep.* 1065 (Supreme Court, 1912, Gummere, C. J.). That was a case where the buyer under the facts delayed too long in notifying the seller of its intention to rescind the contract for a breach of warranty.

So, too, in *Hirsch* v. *Verschuur,* 93 *N. J. L.* 277; 108 *Atl. Rep.* 181 (Supreme Court, 1919, Swayze, J.), where the buyer wore the coat and after so doing made two payments on account of the purchase price, one two weeks and one a month after receiving the coat. There was no finding that the goods were in substantially the same condition when the offer to return was made as they were when the property was transferred to the buyer.

*Vapor Vac. Heat. Co.* v. *Kallenbach & Stephens,* 94 *N. J. L.* 450; 111 *Atl. Rep.* 171 (1920, Swayze, J.), was a case of my own law firm, but that case turned on the evidence as to the continued possession and use of the apparatus which, under section 48 of the Sale of Goods act (*R. S.* 46:30-54), might amount to an acceptance. There was no question of rescission involved in that case.

*Otis Elevator Co.* v. *Headley,* 81 *N. J. L.* 173; 80 *Atl. Rep.* 109 (Supreme Court, 1911, Gummere, C. J.), was a suit by the manufacturer against the owner for final payment of the purchase price. The refusal of the defendants to make the final payment was based upon the alleged fact that the elevator did not make the speed contracted for. They made no effort to rescind the contract, but, on the contrary, continuously used the elevator for over two years.

*Woodward* v. *Emmons,* 61 *N. J. L.* 281; 39 *Atl. Rep.* 703 (1897, Vredenburgh, J.), was a case of a suit on a note, as if the original vendors were plaintiffs, arising from the sale of three pulverizing machines (intended to grind to fineness

stone and other hard materials), and the buyers sought to set up a total failure of consideration because of an alleged false warranty made in the sale of the machines. The case was barren of any offer by the vendees either to return or redeliver the machines, or to surrender or abandon possession of them to the vendors. The court held that this failure, together with the continued use for purposes of profit or convenience for almost a year, should be construed to be an election on the part of the vendees to accept and retain the machines and rely upon their warranty.

*Beuret* v. *Stahl*, 129 *N. E. Rep.* 407 (App. Ct., Indiana, 1921, Remy, C. J.), is a case which, in my opinion, comes closer to the instant case than any of the other cases cited. In that case the seller entered into a written contract with the buyers by the terms of which he sold to buyers and agreed to install in their dwelling house a warm air furnace. On April 24th, 1917, the buyers made a case payment of $80 and executed their note for a like sum due February 1st, 1918. The contract contained the following guarantee:

"We guarantee that the furnace will warm all rooms to which complete run of pipes has been made by us to a temperature of seventy degrees Fahrenheit in zero weather, the owner to furnish a suitable chimney flue, proper fuel and to obey our directions.   *   *   *

"In case the furnace fails to heat house as per guarantee above, and we are unable to correct the fault, we will remove the furnace and refund the money paid."

The furnace, when tested, did not meet the requirements of the warranty and the seller was notified by the buyers of the failure of the furnace to meet these requirements. The seller made some alterations but did not, and could not, correct the defect. The buyers thereupon notified the seller that in accordance with the terms of the contract, he could remove the furnace. He did not, nor would he refund the cash payment of $80. The furnace remained in the house and was used by the buyers until the date of the trial. The seller commenced suit on the note and the buyers filed an answer in denial and a counter-claim upon the contract of warranty demanding judgment for the amount of the cash installment of the purchase price paid.

The court held that by reason of the terms of the warranty in the contract, the buyers were not required to return, or offer to return, the furnace. The court further said that the fact that the furnace in controversy was built into and was a part of buyers' house and its continued use by buyers was a circumstance which it was proper for the trial court to consider on the issue as to whether or not the furnace had been accepted by the buyers, but under the facts in the case, is not conclusive evidence of acceptance. The buyers were not required to forego the use of the furnace which, though defective, was at the time a part of the dwelling. See, also, *Schwartz* v. *Church of the Holy Cross (Miss.)*, 62 *N. W. Rep.* 266 (church altar).

It is true that as defendant's counsel avers, the cases of *Beuret* v. *Stahl, supra,* and *Schwartz* v. *Church of the Holy Cross, supra,* are abstracted under the annotation of "b. Incidental, temporary, or occasional use" to the case of *Brandenburg* v. *Samuel Stores (Iowa Sup. Ct.,* 1931), in 77 *A. L. R.* (at *pp.* 1176, 1177).

The New Jersey case of *Hirsch* v. *Verschuur,* 93 *N. J. L.* 277; 108 *Atl. Rep.* 181, is also mentioned in the same annotation, and in annotation III, "Waiver or abandonment of attempted rescission, or offer to rescind, by use thereafter," page 1178 of 77 *A. L. R.,* will be found the case of *Libby* v. *Haley (Maine,* 1898), 39 *Atl.* Rep. 1004, holding that the question whether the buyer of a horse had waived the right of rescission by use of the animal after tender thereof to the seller, and his refusal to accept it, was for the jury.

Under this annotation the following rule is stated:

"After an attempted rescission by the buyer of chattels, which the seller has not accepted, the buyer, if he intends to rely upon it, must adhere thereto and act consistently therewith, and if he thereafter continues to use the propery as his own, he may be held to have waived or abandoned the rescission, and may be precluded from rescinding or asserting a claim that he has rescinded; in other words, the use of chattels sold, by the purchaser, after the seller has refused the latter's tender of them in a rescission of the contract, will defeat the attempted rescission, if the property was used for the per-

sonal benefit of the purchaser, and not merely in compliance with his duty as bailee of the seller."

This doctrine was applied, or at least recognized as applicable, in the case of *Dodsworth* v. *Hercules Iron Works* (1895), 66 *Fed. Rep.* 483, where the purchaser of an ice machine continued to use it in the ordinary course of its business for more than two years after notifying the seller that it would not accept the machine; in *Buckstaff* v. *Russell & Co.* (1897), 79 *Id.* 64, where the purchasers of machinery continued to use it for more than three years after notifying the seller of their election to rescind, and at the end of this period sold all of the machinery and appropriated the proceeds to their own use; in *Southern Gypsum Co.* v. *United Paperboard Co.* (1926), 11 *Fed. Rep.* (*2d*) 58, where the purchaser of materials promptly rejected them, but during the four months following delivery continued to use them and consumed a part thereof; in *Stillwell, B. & S. V. Co.* v. *Biloxi Canning Co.* (1901), 78 *Miss.* 779, where the purchaser of a refrigerating machine notified the seller that it was not in accordance with the contract, and that after a certain date the purchaser would hold it as security for what had been paid upon it, but after such date proceeded to use it for three weeks until it was seized under process issued in a suit for the purchase price; in *Gordon Dryer Co.* v. *Staier Chemical Co.* (1921), 191 *N. Y. Supp.* 201, where the purchaser of a drying machine complained to the seller that the machine was not working properly, and after the latter had made several unsuccessful attempts to correct the defects, notified him to take it out, but thereafter continued to use it for about two months until it ceased to operate its entire plant; and in *Maples* v. *Douglass* (1920), 205 *Ala.* 94, where it was held that there is no presumption that the purchaser has so acted as to waive or abandon an attempted rescission by use thereafter, and the burden of allegation and proof with respect to waiver of rescission is upon the party who would take advantage thereof.

In view of my conclusion that the defendant failed to make good on its warranty of the heating system, and plaintiffs' prompt rescission of the contract, I am impressed with what is said in the case of *Hayes* v. *Nashville*, 80 *Fed. Rep.* 641 (at *p.* 645), namely:

"A technical rescission of the contract has the legal effect of entitling each of the parties to be restored to the condition in which he was before the contract was made, so far as that is possible, and that no rights accrue to either by force of the terms of the contract."

Mr. Justice Swayze, in discussing the rule of law that goods must be returned, in the case of *Roberts* v. *James* (1912), 83 *N. J. L.* 492; 85 *Atl. Rep.* 244, said:

"The rule, like other rules of justice must be so applied in the practical administration of justice as shall best subserve, in each particular case, the undoing of wrong, and the vindication of the right."

I do not think, under the facts of this case, that the plaintiffs and their infant child would have had to remain through the winter in a house without heat, or the plaintiffs to go to considerable expense by ripping out the whole heating plant and removing it from their building in order to install another plant because the plant agreed to be installed by the defendant failed to meet their guarantee. If the heating plant, by the continued failure of the defendant to remove it from plaintiffs' premises, has deteriorated, it is due to their own failure in not accepting plaintiffs' offer to return the same when they elected to rescind the contract.

Under the circumstances, I think it is only reasonable to conclude that the buyers' retention of the heating plant has been as bailee for the seller. There will therefore be a verdict in favor of the plaintiffs and against the defendant corporation for $690, together with interest and costs.