WILLIAM GATES, JR., BY HIS NEXT FRIEND, LOUISE GATES, AND LOUISE GATES, PLAINTIFFS-APPELLANTS, v. ST. JAMES OPERATING CO., INC., DEFENDANT-RESPONDENT.

Submitted May 2, 1939—Decided July 14, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PORTER.

For the appellants, *Parsons, Labrecque & Borden.*

For the respondent, *Durand, Ivins & Carton.*

The opinion of the court was delivered by

DONGES, J. Plaintiffs brought suit to recover for injuries sustained by the infant plaintiff, William Gates, Jr., by being struck in the face by one Malcolm Marshall, acting manager of the St. James Theatre in Asbury Park, which was operated by the defendant-respondent, St. James Operating Co. The incident occurred early in the morning of January 1st, 1937, in the balcony of the St. James Theatre where plaintiff was attending the New Year's Eve showing of motion pictures.

The testimony on behalf of plaintiff is that he was sitting with two young men friends in the balcony; the theatre was

crowded and the audience was very noisy; there was considerable disorder; objects were rolled down the aisles. An usher came to the place where the three were seated and spoke to the plaintiff. A short time thereafter Malcolm Marshall came to the plaintiff and said: "Didn't the usher tell you to take your feet down?" Before plaintiff had a chance to reply, Marshall struck him across the face with the back of his hand. Plaintiff said: "What did you hit me for?" Whereupon Marshall struck him again in the face and said: "Don't give me any back talk." Subsequently, Marshall apologized to the plaintiff and said, "I am very sorry, I didn't mean to hit you but I lost my temper."

The trial judge granted a motion for nonsuit in favor of the defendant, St. James Operating Co., Inc., upon the ground that the company could not be held liable for the assault committed by Marshall. Thereupon plaintiff took a voluntary nonsuit as to Marshall, who also had been named defendant.

The propriety of this ruling is before us for review. Plaintiffs-appellants rely upon a line of cases, among which are *Wendelken* v. *N. Y. S. and W. Railroad Co.*, 88 *N. J. L.* 270; *Marmorstein* v. *State Theatres Corp.*, 6 *N. J. Mis. R.* 66; *affirmed*, 106 *N. J. L.* 574; *Vilolo* v. *Nicotera Loan Co.*, 10 *N. J. Mis. R.* 625; *Carey* v. *Wolff & Co.*, 72 *N. J. L.* 510, and contend that Marshall's relation to the corporate defendant was such that it was liable for his assault upon plaintiff. The holding, in general, of those cases is that "where the act is done or authorized or commanded by one or more officers of the corporation so high in authority as to be fairly considered executive in character, the corporation has been held responsible for their action on a theory akin to that of general agency."

We are of the opinion that the proofs disclose that Marshall was not such an agent of the defendant company in this case. He was "acting manager." A Mr. Jonasson was manager of this theatre and of a related theatre, the Mayfair, located next door. Jonasson had an office in the Mayfair but visited the St. James hourly. On matters requiring decisions of importance Marshall was required to consult

Jonasson for instructions. Marshall cannot be said to be an officer so high in authority as to be a general agent. We see no merit in this contention of the appellants.

However, it has frequently been held in this jurisdiction that when a servant or agent of a corporation, acting within the scope of his employment, performs his duty with excessive force and inflicts injury, the corporation may be held to respond in damages. *W. J. and S. Railroad Co.* v. *Welsh*, 62 *N. J. L.* 655; *Darrah* v. *Erie Railroad Co.*, 114 *Id.* 132. In *Heenan* v. *Hoore Coal Co.*, 12 *N. J. Mis. R.* 263; *affirmed*, 113 *N. J. L.* 388, a watchman, in ejecting a trespasser from his employer's premises, shot and wounded him. The trial court directed a verdict for the defendant employer and the Supreme Court reversed the judgment, holding:

"Unquestionably the conduct was willful, wanton and malicious and the defendant is responsible therefor if such conduct was within the scope of the employment. Under the facts and circumstances of this case we think that issue should have been sent to a jury for determination." The Court of Errors and Appeals in affirming said:

"We agree that there was a jury question as to the actual or implied authority of defendant's servant, employed as a watchman, to eject trespassers from the premises including the coal trestle, and that if such authority existed, and if in ejecting a trespasser by virtue thereof unnecessary force was used, the master would be liable in compensatory damages even if the conduct was legally malicious, so long as it was within the scope of employment. A claim for punitive damages as against the master would be a very different matter."

The question in the instant case then is whether Marshall was acting within the scope of his employment and used excessive force to perform some act on behalf of the defendant. If there was any evidence that he was so acting this question should have been submitted to the jury as one of fact. Concededly, at this New Year's Eve performance, there was a great deal of disorder and hilarity. It is admitted in respondent's brief that it was Marshall's duty to maintain order in the theatre. Marshall himself testified:

"*Q.* Who attempted to maintain order during that evening?

*A.* The ushers. *Q.* Did you have any part in it? *A.* Yes. *Q.* Did you oversee the ushers in maintaining order? *A.* Yes. *Q.* Did you tell the ushers what to do? *A.* Yes. *Q.* Did you go around through the theatre? *A.* Yes. *Q.* And during that evening in the theatre did you go into the balcony? *A.* Yes. *Q.* Did you go to the balcony for the purpose of maintaining order? *A.* Yes. *Q.* Was that your duty at the theatre? *A.* Yes. *Q.* To maintain order? *A.* Yes."

As stated above, the testimony was that an usher spoke to plaintiff before Marshall came to his seat. It is not testified what the usher said to the plaintiff, although plaintiff denied on cross-examination that the usher told him to cease making noise.

In view of all these circumstances, the fact that there was a great deal of disorder, the fact that an usher spoke to plaintiff, the fact that it was the duty of Marshall to maintain order, the remark made by Marshall to plaintiff concerning taking his feet down, we are of the opinion that a jury question was presented on the issue of whether Marshall was acting within the scope of his employment in attempting to preserve order when he dealt with the plaintiff, or made an assault upon him as the result of something entirely disconnected with his employment. The question of the use of excessive force was likewise for the jury. This leads to a reversal of the judgment.

One further thing remains to be noted. Plaintiff claims both compensatory and punitive damages. There is no evidence that the defendant master participated in the wrongful act of the servant either expressly or impliedly by conduct authorizing or approving it, either before or after it was committed. *Shallcross* v. *West Jersey Railroad,* 75 *N. J. L.* 395; *Wendelken* v. *N. Y. S. and W. Railroad Co.,* 88 *Id.* 270. In view of the above quotation from the opinion of the Court of Errors and Appeals in *Heenan v.* Horre Coal Company, we are of the opinion that this case is one in which compensatory damages only and not punitive damages may be sought against the corporation, if recovery be had.

Judgment reversed, and *venire de novo* awarded. Costs to abide the event.