49 N.J. Super. 429 (1958)
140 A.2d 228
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM J. VOJACEK, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1958.
Decided April 1, 1958.
*430 Before Judges GOLDMANN, FREUND and CONFORD.
*431 Mr. Walter D. Van Riper argued the cause for appellant (Messrs. Van Riper & Belmont, attorneys).
Mr. Myron W. Kronisch, Legal Assistant Prosecutor of Essex County, argued the cause for respondent (Mr. Charles V. Webb, Jr., Essex County Prosecutor, attorney; Mr. Kronisch, of counsel and on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendants Vojacek and Fischer, owners and operators of a used car business known as Ladd's Auto Sales, were indicted, together with certain of their salesmen, for conspiring to obtain money and other things of value by false pretenses, in violation of N.J.S. 2A:98-1 and 2. The charge was that they knowingly, fraudulently and falsely represented to customers that certain motor vehicles offered for sale were leftover new cars which had not been sold after the latest models had become available, when, in fact, the motor vehicles were used cars. The overt acts set out in the indictment described an advertising program in newspapers, on television and on radio wherein Ladd's Auto Sales announced that it had "leftover" cars for sale. Three of the overt acts referred to specific transactions in which Walters and Monaco, two salesmen, and Fischer, respectively falsely represented to purchasers that certain used cars were new cars.
Vojacek and Fischer were convicted, as were Walters and Monaco, but only the former appeal.
Evidence supporting the conviction came through the testimony of a number of purchasers who stated that many cars were represented to them as new by Vojacek and Fischer and by their salesmen, when in fact they were used automobiles. The conviction was additionally amply supported by evidence of newspaper, television and radio advertisements of "leftover" automobiles, so worded as to lead the public to believe that all of the cars mentioned were leftovers, whereas many if not most of them were actually used cars. The State established through purchasers that *432 they relied upon the language of these advertisements as meaning new cars left over from a previous year, and not used cars.
Defendants denied misrepresentation, and Vojacek testified that in the trade "leftovers" could refer to new or used cars of prior years' models  they were simply surplus merchandise. However, Vojacek was confronted with contradictory testimony he had given before the grand jury to the effect that a car with a mileage reading of more than about 1,000 miles would be considered a used car and not a "leftover." There was also defense testimony that each time "leftover" cars of prior years were advertised, there was a new car or cars on Ladd's Auto Sales premises matching the description in the advertisements.
Among the stipulations entered into before trial were: (1) in the conditional sales contracts signed by customers the space provided for the word "new" or "used" was always left blank, and (2) each car referred to by the State's witnesses was actually a used car, and known to be such by each of the defendants at the time the car was sold.

I.
On this appeal defendants Vojacek and Fischer do not argue that the verdict was contrary to the weight of the evidence. This is understandable in light of the fact that the record supports the conviction in fullest measure. Rather, their major ground of appeal is that the trial court erred in refusing to permit testimony which, defendants claim, would have enabled them to demonstrate that their profit on each of the sales said to have been fraudulently induced was not greater than a normal or fair profit, and that the price they received for the cars not in excess of their market value as used cars. Defendants argue that evidence of the cost of the cars to them and the prices at which they sold them to their customers, as well as the actual fair value of the cars in the condition they were at the time of the sale, and the fair value of the cars had they in fact been new leftover models, should have been admitted *433 to show lack of motive for a conspiracy to obtain money by false pretenses. The rationale of this argument is that if the jury knew that defendants did not obtain an unfair price for the cars in their actual condition, it would have been less likely to convict them of the misrepresentation charged.
The State argues in its brief, and the record tends to support its contention, that the trial judge did permit defendants to show their cost on each car sold, as well as the sales price, thus revealing the amount of their profit. What the court refused to permit was evidence of the fair market value of each car, first, in its actual condition as of the date of the sale and, second, the hypothetical value had the car been (as represented) a new leftover as of that time.
The general rule in criminal prosecutions is that whenever the motive or intent of the accused is important and material, "[a]ll evidentiary circumstances which are relevant to or tend to shed light on the motive or intent of the defendant or which tend fairly to explain his actions are admissible in evidence against him * * *." Defendant can then, in turn, offer rebutting proof tending to negative motive. State v. Rogers, 19 N.J. 218, 228-229 (1955); 22 C.J.S. Criminal Law § 614, p. 934 (1940).
It should first be noted that neither defendants' cost nor selling price, nor book value, was part of the indictment or, indeed, part of the State's case. It was defense counsel who introduced selling price on his cross-examination of the State's first witness, and then brought in dealer's cost and market or book value during his direct examination of defendant Vojacek. Evidence of cost was admitted whenever actually offered by defendants, but then defense counsel sought to bring in the third element of value, namely, book value of the cars involved, by reference to the "Blue Book" published for dealers. Upon objection by the State this testimony was excluded.
The jury was then excused so that defense counsel could make his offer of proof as to book value. In the ensuing very extended colloquy defense counsel argued in support of *434 the admission of testimony as to value based on a "recognized standard of price"  the trade periodical  to show that the price paid for each car by the purchaser was lower than that to which defendants were entitled under the standard used in the trade. The trial judge ruled that such testimony would be excluded, and stated the question to be: "Did these defendants conspire to sell these cars by representing that they were new or unregistered cars ?"  adding "I do not concede that it is any part of the proof under this indictment that the cars were sold at a small margin of profit or at cost or at a large margin of profit." He observed that the mere fact that testimony was permitted as to the selling price of the cars  defendants having every right to meet that testimony  "does not open the collateral angle to obliquely meet that in the fashion suggested by offering testimony that these people got a good buy or that they didn't pay any more for the car than if they had been told it was a used car, or that they didn't pay any more for the car than for any other used car."
When defense counsel urged that he had a right to offer the value of the cars to rebut any inference of motive, the court noted that margin of profit was not the only consideration; that it was entirely consistent with the indictment for the State to take the position that the motive was increased volume of sales, at whatever profit  in other words, that even if defendants sold their cars at a normal profit for the condition and kind of car sold, their purpose was to sell more cars at that profit than they normally would have, by representing them to be new leftovers. The court indicated that it would charge on this point, and it eventually did when it instructed the jury:
"Now let me clear up one point that has arisen. Perhaps this will be as good a time as any to clear it up. It has been pointed out, and it is true, that the State offered no evidence before you that the purchasers paid more for the cars than they were actually worth. The State's contention is not that the defendants conspired to get the purchasers to pay more for the car than they otherwise would. The State's contention under this indictment is that the defendants conspired to induce purchasers to buy cars, at whatever price they paid, by falsely representing the cars to be new cars. The testimony *435 of prices paid for the cars was not received in this case to show that the purchasers had been overcharged, but simply to show that the purchase in each individual case had been completed."
Technically, it perhaps would not have been improper for the trial court to admit the evidence of the "Blue Book" value of the cars, because defendants' realization of only such profit on each sale as they might normally be expected to make on the sale of a used car would tend to refute in some degree the charge that they represented the cars to be new. However, theoretically relevant testimony may always be curtailed or even disallowed where the combination of its degree of remoteness, together with the extent of the collateral issues which would be introduced, would delay the trial and tend to confuse the issues. Such was the basic reason given by the trial judge for excluding the proffered testimony.
Relevance, as Justice Jacobs remarked in his article on "The Uniform Rules of Evidence," 10 Rutgers L. Rev., 485, 492, is expressed in terms of logic rather than legal precedent. And Judge Clapp observed in Miller v. Trans Oil Co., 33 N.J. Super. 53, 59-60 (App. Div. 1954), affirmed 18 N.J. 407 (1955), that
"A trial judge in his discretion may exclude evidence if he finds its probative usefulness is substantially outweighed by the risk that it will lead to either * * * undue consumption of time [or] confusion of issues * * *.
* * * [A] trial judge's decision on the exercise of this discretion is not reversible, unless it appears manifest that he has made a mistake * * *.
* * * Our inquiry under the principle stated must be whether in admitting the testimony, there was a risk of unjust prejudice to the plaintiff's case which substantially outweighed the probative usefulness of the testimony; and, further, whether the trial judge, who is entrusted with a discretion in the making of such a determination, committed manifest error. * * *"
In the present case it is easy to see how complex and ramified the collateral issues might become if defendants were permitted to introduce their proofs on market value. In the case of each sale to a complaining customer (there were some 40 witnesses who testified to about 25 individual *436 sales of used automobiles, represented by one or more of the defendants to be new cars), there would have arisen two valuation issues: (1) the market value of the car "as is" as of the time of sale, and (2) the market value of a car of the same description but assumed to be a new leftover. On objection to this kind of testimony the trial judge actually essayed a trial series of questions and answers with defendant Vojacek, in the absence of the jury, to see just where it all would lead. It quickly became apparent to him, as it is to us, that the widest variety of estimates might come into the case on the question of market value under either of the two stated heads. The State might then have been justified in adducing rebutting proof through its own expert witnesses, to refute the valuation estimates given by defendants and their witnesses. The whole trial would probably have degenerated into a confusing series of 25 valuation cases, with two aspects of each. The basic issue of fraudulent representation would have been completely lost in the process.
The trial judge was correct in his exercise of discretion as to this matter. The basic issue was whether defendants had conspired to obtain money from the general public by false pretenses, in fraudulently representing used cars to be leftover new cars. Defendants are in error when they argue that if the State showed no motive to charge an exorbitant price there would be no motive established for the conspiracy charged. They ignore the existence of a motive, obvious and basic to every business  to develop a volume of transactions with a possible net profit on each.

II.
Defendant's next argument is projected under the general heading that the trial court incorrectly charged the jury with respect to the meaning of the word "leftovers." We see no merit in this contention. In essence the court charged that if defendants had reason to believe that the public, as a result of the use of the word "leftovers" in their advertisements, would be led to purchase a particular automobile under the impression that it was a new car which had *437 remained unsold when the latest models appeared, defendants could be found guilty of the charge even though, in the trade, the term "leftovers" might be understood to signify either new cars or used cars.
Breaking defendants' portmanteau claim of error in the charge down into its several parts, we find nothing to sustain the contentions and suggestions made. The argument that the court in effect told the jury that the interpretation placed by the public on the word "leftovers" was binding on defendants "regardless of what construction the defendants intended the public to place on it," is contradicted by the charge:
"* * * What did the word `leftovers,' placed and used as it was in Ladds' advertisements, mean to the readers or the listeners or the viewers who were not `in the trade'? Did it mean to them new cars which had not been sold by new car dealers? If you find it did, then you should ask yourselves: Did the defendants know it would mean that to those not in the trade? If they did, if the defendants did know that, then meaning of the words in the trade, even if there was one, would be immaterial. The defendants would have to be judged by the meaning placed on the word by the purchasers if the defendants expected and intended that the purchasers should get that interpretation of the word."
The further suggestion that the court's charge might be understood by the jury as an instruction "to consider something `said' by the State as evidence" finds no support in the record, for the court distinctly told the jury that it was its obligation "to decide the case in accordance with the facts as you find them, not as the Court or the prosecutor or counsel for the defendants interpret or recollect them."
Defendants' brief lays some stress on the fact that at least one of the advertisements in evidence referred to "leftovers" as being both new and used cars. That advertisement stands alone among a large number of newspaper advertisements and television and radio commercials. In all probability it was accidental; certainly it was never repeated. The typical advertisement refers to "leftovers" of one year, and then mentions a "large selection" of cars from the previous year.
*438 Defendants' statement that there was no evidence to support the State's contention as to the meaning of the word "leftovers" intended by defendants, completely ignores all the advertising and all the testimony relating to each of the 25 sales. The record exhibits an abundance of evidence, direct as well as circumstantial, demonstrating that defendants, particularly in the course of actually selling cars to the several complaining witnesses, consistently used the word "leftovers" to mean new cars available after the latest models had appeared and never previously sold to an ultimate consumer.
Finally, defendants claim that whenever an advertisement appeared there were new cars for sale on their lot. Not only is this no defense to the charge leveled against them, but the inferences which arise from that statement would seem to point to guilt. If there were new cars on the lot to satisfy the representation made in the "leftovers" advertisements, and this is offered as proof that the advertisements were true, it seems reasonably clear that defendants were aware that customers would understand the word "leftovers" to mean "new." The alleged presence of a new car or cars on defendants' lot whenever an advertisement appeared would seem to amount to little more than a protective coloration, a cover, for their fraudulent activity.

III.
As a third point, plaintiffs complain of the court's refusal to charge two of their requests. Both refer to the word "leftovers." We find that the court adequately and correctly dealt with that subject in its charge. Parties are not entitled to have the jury instructed in the precise language of their requests, as long as the subject matter is correctly and fully covered in the charge, as it was here. State v. Rogers, above, 19 N.J., at page 238; State v. Tansimore, 3 N.J. 516, 526 (1950).
We have read the charge as a whole and find no error or prejudice to defendants.
Affirmed.