52 N.J. Super. 247 (1958)
145 A.2d 335
FRANCIS KELLEHER, PLAINTIFF-RESPONDENT,
v.
DETROIT MOTORS, A CORPORATION, DEFENDANT-APPELLANT, AND DON ORLEY, ALSO KNOWN AS DONALD ORLOWSKI, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1958.
Decided October 20, 1958.
*248 Before Judges PRICE, SCHETTINO and GAULKIN.
*249 Mr. Joseph Coult argued the cause for appellant (Messrs. Coult and Schoenholz, attorneys).
Mr. Arthur C. Gillette argued the cause for plaintiff-respondent.
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiff recovered a judgment for $4,000 against Detroit Motors and Don Orley, its salesman. When the complaint was served upon Orley it contained only the first count hereafter mentioned, which sought compensatory damages of $2,350.76. Orley failed to file an answer. Thereafter the complaint was amended to add a second count which demanded $10,000 punitive damages. The amended complaint was never served upon Orley. Plaintiff concedes that so much of the $4,000 judgment as represents punitive damages awarded against Orley on the second count is invalid, even though Orley has not appealed. Detroit Motors appeals from the entire judgment.
Plaintiff's complaint, as amended, alleged that in October 1956 defendants had sold him an automobile represented to be a new 1956 Chevrolet when it was in fact used; that immediately upon learning this he offered to return it to defendants upon refund of the purchase price of $2,100 plus carrying charges of $250.76 which he had paid upon the conditional sales contract under which the automobile had been sold to him; and that defendant had refused to accept the car or to refund those sums to him. Plaintiff therefore demanded, in the first count of his complaint, the sum of $2,350.76. In the second count he repeated these allegations and demanded punitive damages.
Detroit Motors' answer denied any misrepresentations and said that if Orley had made any the corporation had no knowledge thereof, did not authorize them and was not responsible for them. The answer (filed April 26, 1957) further alleged that plaintiff had used the automobile "for a period of four months." In the pretrial order the defendant asserted that if there was any fraud it was committed *250 by Orley without the corporation's knowledge or consent, and consequently the corporation was not liable for punitive damages. Among the issues stated in the pretrial order was "rescission or attempted rescission."
The car was purchased in October 1956 and plaintiff tendered its return three months later. At the trial in January 1958, 14 months after the purchase, plaintiff testified as follows on cross-examination:
"Q. Mr. Kelleher, you still have this car today? A. Yes.
Q. You use it? A. Yes.
Q. You used it ever since you took it out of the Detroit Motors lot, is that right? A. That's right."
At the conclusion of plaintiff's case defendant moved to dismiss the first count (which demanded $2,350.76) on the ground that since plaintiff continued to use the automobile for almost a year after the tender he waived the rescission. Therefore, said defendant, the measure of his damages was the difference between the value of a new 1956 Chevrolet in October 1956 and the car which he received, and since no evidence of that difference had been offered by plaintiff, defendant was entitled to a dismissal of the first count. Defendant also moved for a dismissal of the second count, for punitive damages, on the ground that it had not been shown that Orley's misrepresentations had been authorized by or brought home to the corporation. Both motions were denied.
At the conclusion of the entire case defendant again moved for judgment on both counts on the ground that plaintiff "still has the use of the car and he has had the use of the car for one whole year," and on the ground that no case had been made out against the corporation for punitive damages. These motions were denied. The court did not submit to the jury in its charge the question of the effect of the continued use of the automobile upon the right of rescission.
The appellant concedes that "it must be taken as established that: Orley was Detroit's salesman; he represented *251 to plaintiff that the automobile sold was new, knowing the representation to be false and intending that plaintiff rely thereon; plaintiff relied upon the representation, discovered its falsity about 3 months after the purchase and immediately offered to return the automobile under circumstances which amounted to an adequate tender; and Orley refused the tender." That is an accurate summary of the evidence. However, says appellant, "After an attempted rescission by the buyer of chattels, which the seller has not accepted, the buyer, if he intends to rely upon it, must adhere thereto and act consistently therewith, and if he thereafter continues to use the property as his own, he may be held to have waived or abandoned the rescission, and he may be precluded from rescinding or asserting a claim that he has rescinded; in other words, the use of the chattels sold, by the purchaser, after the seller has refused the latter's tender of them in a rescission of the contract, will defeat the attempted rescission, if the property was used for the personal benefit of the purchaser, and not merely as bailee of the seller." That is a correct statement of the law. Kvedar v. Shapiro, 98 N.J.L. 225, 229 (E. & A. 1922); Hartman v. Smyth Sales, Inc., 18 N.J. Misc. 168 (Sup. Ct. 1939); Annotation, 77 A.L.R. 1165, 1178, supplemented in 41 A.L.R.2d 1173, 1185; 3 Williston on Sales, sec. 611, p. 357-358.
Frequently it may be a question for the jury whether the continued use of the article was a waiver of the right to rescind. Kvedar v. Shapiro, supra; Hartman v. Smith Sales, Inc., supra. However where, as here, the automobile has been used for almost a year after the attempted rescission, in the absence of any explanation by the buyer it is a waiver of the right to rescind as a matter of law. Cf. Woodward v. Emmons, 61 N.J.L. 281, 282 (E. & A. 1897); Achilli v. Alongi, 346 Ill. App. 210, 104 N.E.2d 645 (Ct. App. 1952); Don McCullagh, Inc. v. Dimitroff, 327 Mich. 656, 42 N.W.2d 775 (Sup. Ct. 1950). In the case at bar there was no explanation. At the oral argument before us plaintiff's attorney stated that if the trial court had indicated *252 that it was inclined to treat the continued use as a waiver of the rescission, plaintiff would have put in testimony to explain the circumstances of that use which would have shown that there was no waiver. Plaintiff contends, moreover, that defendant's answer pleaded use only up to the date of tender (which plaintiff met with proof that the tender was made as soon as he discovered the fraud), and since defendant did not plead use after the tender it was not an issue in the case. If defendant had pleaded such continued use, says plaintiff, he would have put in testimony to explain it.
It is true that the pleadings do not raise this issue sharply. However, they did touch the issue, as indicated above, and in the light of plaintiff's own testimony of his continued use the court should have at least inquired further into it. In the face of that unexplained admission by the plaintiff the court could properly have entered judgment for defendant on the first count. In any event, it would not be just to permit the judgment on that count to stand against either Detroit Motors or Orley, except as an adjudication of liability. Therefore, that judgment will be reversed to the end that there be a new trial on the first count as to damages only. Plaintiff may then prove, if he can, his right to the $2,350.76 in spite of the apparently continued use of the automobile, or he may elect to sue for the difference between the value of a new car and the used car which he received. In any event, there should be a new pretrial, and the parties may elect to amend their pleadings. See Board of Education Township of Woodbridge v. Kane Acoustical Co., 51 N.J. Super. 319 (App. Div. 1958).
As to the count for punitive damages, we find that the evidence does not warrant the assessment of punitive damages against the corporation. In New Jersey an employer is not liable for punitive damages unless the agent was authorized by the corporation to make the misrepresentations, or there was ratification, or knowledge of the misrepresentations was brought home to the corporation and it acquiesced therein and retained the benefits. Zullo v. *253 Central R. Co., 9 N.J. Super. 49 (App. Div. 1950); Gates v. St. James Operating Co., 122 N.J.L. 610 (Sup. Ct. 1939); Hammer v. Gordon, 12 N.J. Misc. 475 (Sup. Ct. 1934); Wendelken v. N.Y., etc., R. Co., 88 N.J.L. 270 (E. & A. 1913); Peterson v. Middlesex and Somerset Traction Co., 71 N.J.L. 296 (E. & A. 1904); Annotation, 48 L.R.A., N.S., 35. Cf. Gindin v. Baron, 16 N.J. Super. 1 (App. Div. 1951).
We do not find in the record in this case sufficient evidence to justify punitive damages against the corporation. So far as this record shows this was an isolated transaction  a single instance of such misrepresentation by a salesman of the corporation. Therefore, the inference of knowledge of misrepresentation by salesmen that might be drawn by a jury from numerous instances of such misrepresentations cannot be drawn here. Cf. State v. Vojacek, 49 N.J. Super. 429, 432 (App. Div. 1958).
Here plaintiff contends the knowledge of the defendant was proven by the following facts: that a sign on the window said "Left over 1956 automobiles"; Morris Rotman, secretary of Detroit Motors, was present when plaintiff signed the conditional sales contract; the conditional sales contract was signed "Morris Rotman," and upon it $1,500 was loaned by a bank to the plaintiff and the check turned over to defendant corporation; and the conditional sales contract said that the automobile was new. However it is not shown in this record (Cf. State v. Vojacek, supra) that the sign "Left over 1956 automobiles" was false. Plaintiff admitted he had been shown four or five cars before he selected this one. The testimony showed that the conditional sales contract was not signed by Rotman but by Orley, who signed Rotman's name, and there was no proof of Orley's authority to do so. The conditional sales contract apparently was signed by the plaintiff in blank. The representative of the bank testified that the conditional sales contract had been filled out by the bank, upon information furnished by Orley. The identification of the person who was about the premises when the conditional sales *254 contract was signed and at other times during the negotiations between Orley and plaintiff was too nebulous to justify a finding that Rotman was the man, and in any event it was not established that the person who was around overheard or could overhear or otherwise acquire knowledge of the misrepresentations. The testimony was that Orley worked for Detroit Motors for only about three months. Plaintiff urged at the oral argument that the "whole Detroit Motors set-up looks suspicious." That may be so, but suspicion alone is not sufficient to carry the burden of proof.
The judgment for punitive damages must therefore be set aside and a new trial had against Detroit Motors (and Orley if he is served) on the second count both on liability and damages. And when the case is tried anew it should be remembered that it is the wiser practice to instruct the jury to bring in separate awards for compensatory and punitive damages, and not to permit the jury to combine them as was done here. Gallichio v. Gumina, 35 N.J. Super. 442, 448 (App. Div. 1955).
Reversed. No costs to appellant.