52 N.J. Super. 332 (1958)
145 A.2d 499
WALTER E. HELLER & COMPANY, INC., A CORPORATION, ASSIGNEE OF THE PEERLESS CORPORATION, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
HARRY HAMMOND, INDIVIDUALLY AND TRADING AS HAMMOND APPLIANCE TELEVISION AND REFRIGERATION CO., DEFENDANT, AND THE HAMMOND APPLIANCE CO., INC., A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1958.
Decided November 3, 1958.
*334 Before Judges PRICE, SCHETTINO and HALL.
Mr. Samuel B. Feld argued the cause for plaintiff-appellant and cross-respondent.
Mr. J. Mortimer Rubenstein argued the cause for defendant-respondent and cross-appellant (Messrs. Saltzman, Rubenstein & Kosoff, attorneys).
The opinion of the court was delivered by SCHETTINO, J.A.D.
Appeal and cross-appeal are taken from a judgment of dismissal of plaintiff's action on a book *335 account and defendant Hammond Appliance Co., Inc.'s counterclaim for alleged storage charges.
On March 19, 1957 plaintiff, the assignee of the Peerless Corporation, filed a complaint on a book account for goods sold and delivered against Harry Hammond, individually and trading as Hammond Appliance Television And Refrigeration Co. Harry Hammond was served on March 25, 1957. Thereafter, on September 10, 1957 plaintiff filed an amended complaint against Harry Hammond, individually and trading as Hammond Appliance And Refrigeration Co., and The Hammond Appliance Co., Inc., hereafter referred to as "Appliance Co." Harry Hammond is president of the corporate defendant. The corporate defendant denied the allegations of the complaint and set forth in the separate defenses that the goods delivered were not of merchantable quality or fit for the purposes of sale, and that there had been a rescission for that reason but the seller had never "picked up" the goods although it had agreed to do so. It counterclaimed for reasonable storage charges. Although the pretrial order is inadequate, we hold that it limited the issues to rescission and to a counterclaim for storage charges. The action was dismissed against Harry Hammond after plaintiff's opening statement.
On July 27 or 28, 1956 Peerless sold to defendant Appliance Co. 50 electric broilers upon an express representation by Peerless that it would accept return of the entire shipment if any of the broilers proved to be defective. After certain credits were deducted the amount to be paid was $1,529. Delivery was made either on July 31, 1956 or shortly thereafter.
The first few broilers sold by Appliance Co. were returned by its customers as defective. An inspection revealed that many were in an imperfect state. Defendant immediately notified Peerless that it was rescinding the sale. The record clearly establishes that Peerless accepted the rescission and agreed to repossess the broilers. Peerless later went into bankruptcy, never having retaken the goods. However, it made arrangements with the Roto-Broiler Company of *336 America to honor its guarantees and service its products. Defendant was notified of these arrangements.
While waiting for the seller to retake the broilers, defendant kept them in its stores. Plaintiff contends they were displayed for sale. Defendant contends they were merely held in storage, taking up valuable store space.
After holding the goods for about a year and after service on Harry Hammond of the original complaint, defendant, acting upon the advice of its attorney, decided to repair some of the broilers and sell them for whatever it could get for them. Starting in July 1957 it sold 27 of them for $625 or $650.
After a trial without a jury, the trial court found the facts substantially as we have just stated but entered a judgment of no cause of action on both the plaintiff's claim and on the defendant's counterclaim. It is unclear on what grounds the judgment of no cause of action on plaintiff's claim was based. As to the counterclaim, the trial court held that defendant did not establish its claim by a preponderance of the evidence as to the reasonable value of the storage charges. The effect of the decision was that defendant did not have to return any of the broilers, or pay for the goods, or turn over any of the proceeds of the sales. At the trial, evidence pertaining to the question of damages for breach of warranty was admitted over plaintiff's objection that the issue was not within the pleadings or pretrial order.
On this appeal plaintiff contends the trial court erred (a) in receiving evidence pertaining to the question of damages for breach of warranty as this issue was not encompassed by the pretrial order, and (b) in allowing the defense of rescission since it was not available because defendant "accepted" the goods by exposing them for sale and reselling a part of them after having originally rescinded the sale. Defendant cross-appeals from the finding against it on the counterclaim.
That there was a breach of express warranty (R.S. 46:30-18) and of an implied warranty of merchantability (R.S. 46:30-21) cannot well be disputed. The goods were *337 certainly defective. Upon such a breach, the buyer has a choice of remedies as outlined in R.S. 46:30-75, which in part is as follows:

"Remedies for breach of Warranty
(1) Where there is a breach of warranty by the seller, the buyer may, at his election:
(a) Accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price.
(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty.

* * * * * * * *
(d) Rescind the contract to sell or the sale and refuse to receive the goods, or, if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid."
It is settled law that the buyer may pursue alternative remedies under this section, but he may only recover under one of them. Rescission and damages for breach of warranty are mutually exclusive remedies. St. George v. Grisafe, 38 N.J. Super. 297, 300 (App. Div. 1955); Paul Gerli & Co. v. Mistletoe Silk Mills, 80 N.J.L. 128, 130 (Sup. Ct. 1910). In fact, a wronged buyer may be required at trial to choose which alternative he will pursue. Paul Gerli & Co. case, supra, 80 N.J.L. at page 130.
It was error for the trial court to receive evidence pertaining to the question of damages for breach of warranty, either in the nature of an affirmative recovery or in the nature of a set-off as against the purchase price, since that issue was not included either in defendant's contention or in the statement of issues in the pretrial order. Furthermore, there is no sufficient notice to be derived from defendant's answer to the amended complaint that it was claiming money damages bottomed upon a breach of warranty either in the nature of recoupment or set-off, or affirmatively for loss of profits. Moreover, in view of the silence of the pretrial order on the whole subject, defendant must be held to have elected at the pretrial conference to proceed only on the defense of rescission.
*338 We next consider the issue of rescission. It is clear that a wronged buyer who is asserting a defense of rescission must be able to place the seller in the same position as he was before the sale. The buyer must be able to return the goods in substantially the same condition as they were when delivered. If he asserts any of the indicia of ownership over the goods he may be held to have nullified his attempted rescission. Kelleher v. Detroit Motors, 52 N.J. Super. 247, 145 A.2d 335 (App. Div. 1958); Hartman v. Smyth Sales, Inc., 18 N.J. Misc. 168 (Sup. Ct. 1939); Kvedar v. Shapiro, 98 N.J.L. 225, 229 (E. & A. 1922). The same rule, as deduced from the many cases therein cited, is set out in an annotation, "Rescission  Waiver of Right," in 41 A.L.R.2d 1173, 1176:
"It is well settled that a purchaser of personal property may waive or lose the right to rescind the contract for fraud, breach of warranty, or failure of the article purchased to conform to the contract, if he uses it in his business or otherwise as his own property, for his own benefit or convenience, and not merely for testing or preserving it, after he has knowledge of the grounds for rescission."
And at page 1185:
"In later cases the doctrine has been applied or recognized that a purchaser's use of chattels after the seller has refused the former's tender of them in a rescission of the contract will defeat the attempted rescission if the property was used for the personal benefit of the purchaser, and not merely in compliance with his duty as bailee of the seller or at the seller's request for purposes of testing or making repairs."
And, again, in 3 Williston on Sales (rev. ed. 1948), pp. 350-351, § 610, we note:
"Though courts which allow rescission for breach of warranty do not regard the temporary use by the buyer necessary to show the defect such a benefit to the buyer or such an injury to the goods as to preclude the right of rescission, he must return the goods as they have been delivered to him. He cannot generally rescind if he has, in whole or in part, retained, resold, or used the goods, beyond what is necessary for trial, or if they have been injured or destroyed."
*339 Under the facts here, there clearly was a valid rescission of the sale by defendant. Shortly after its discovery of the defective broilers, defendant notified the seller that it was rescinding. The broilers were purchased and were to be resold in individual sealed cartons, so, in accordance with the express agreement of the parties, defendant was justified in rescinding the entire sale on discovery of defects in some of the articles. After an inspection of the goods, the seller agreed to pick up the goods which were being held in defendant's store. The seller thereby accepted the rescission. But when defendant thereafter decided on advice of counsel to try to do something more by repairing and selling a number of them, defendant then waived and nullified its defense of rescission, according to the rule enunciated by the above authorities. See also 3 Williston on Sales (rev. ed. 1948), pp. 357-358, § 611.
While it is clear that a buyer is not required to retain the goods indefinitely after a notice of rescission and the failure of the seller to retake the goods, we are not concerned with that question here. Defendant had not paid any portion of the purchase price. R.S. 46:30-75(5) states that the buyer, in this type of situation, shall "be deemed to hold the goods as bailee for the seller." It would appear that after a seller had failed to pick up the goods within a reasonable time, the buyer would be justified in selling them for the seller's account after giving reasonable notice of such proposed sale to the seller. In Cannon v. Chadwell, 25 Tenn. App. 42, 150 S.W.2d 710, 713 (Ct. App. 1941), cited in 1A U.L.A. 338, the court said:
"Where the seller refuses to accept return of the property the buyer may and should, at the seller's expense, resell the property for the seller's account, at the best price obtainable, and account and give credit for the proceeds, after giving prior notice to the seller of the contemplated resale for his account." (Emphasis supplied.)
See 3 Williston on Sales (rev. ed. 1948), pp. 84-85, § 498, with reference to perishable goods. Here, defendant could have protected its defense of rescission while making the *340 sales by previously notifying the seller that defendant proposed to sell the goods on seller's account as the involuntary bailee of the seller. The proceeds of such sale would be applied first to the buyer's expenses in holding and selling them and the balance would be remitted to the seller. There is no evidence before us that defendant gave any notice but rather that, after suit was started against it for the purchase price and defendant had pleaded rescission as its defense, it proceeded to sell the goods without notice.
Since we conclude that there is no valid defense to plaintiff's claim, the judgment of no cause of action against plaintiff must be reversed. We direct the entry of a judgment for the plaintiff for $1,529. R.R. 2:9-1(b); R.R. 1:9-1(b); Miller v. Board of Chosen Freeholders of Hudson County, 10 N.J. 398, 415 (1952); Borough of Lodi v. Fravi Realty Co., 4 N.J. 28, 34 (1950).
In view of our determination in favor of plaintiff on its cause of action, defendant's counterclaim for storage charges cannot be sustained. When a buyer, who is entitled to rescind, does so and therefore holds the goods for the seller, he is entitled to be paid for any reasonable and necessary expense incurred in storing them. 3 Williston on Sales, supra, p. 354, § 610. But here defendant nullified the rescission by selling the goods and consequently is not entitled to recover for storage charges. We sustain the judgment for plaintiff on the counterclaim.
Judgment of no cause of action on the plaintiff's claim is reversed and judgment for $1,529 is ordered to be entered in its favor and against the corporate defendant. Judgment of no cause of action on the counterclaim is affirmed.